IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HEATHER W.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20-cv-00728 |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### REPORT & RECOMMENDATION

Plaintiff Heather W. ("Heather") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Heather alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine her residual functional capacity ("RFC") using a function-by-function analysis; (2) assess her mental impairments; (3) weigh an opinion from her treating provider; and (4) assess her allegations regarding her symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14) and **DENYING** Heather's Motion for Summary Judgment (Dkt. 12).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Heather failed to demonstrate that she was disabled under the Act.[3] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," <u>Biestek</u>, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Heather filed for DIB in February 2018, claiming her disability began on March 20, 2015, due to bipolar disorder, anxiety disorder, migraines, depression, pre-diabetes, attention-deficit/hyperactivity disorder ("ADHD"), recurrent kidney stones, and high blood pressure. R. 168–69, 199, 202. Heather's date last insured ("DLI") was September 30, 2016; thus, she must show that her disability began on or before this date and existed for twelve continuous

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

months to receive DIB. R. 199; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Heather's applications at the initial and reconsideration levels of administrative review. R. 61–75, 77–91. On March 11, 2020, ALJ David Lewandowski held a hearing to consider Heather's claims for DIB. R. 37–60. Counsel represented Heather at the hearing, which included testimony from vocational expert Marilyn Stroud. On April 7, 2020, the ALJ entered his decision analyzing Heather's claims under the familiar five-step process[4] and denied her claim for benefits. R. 16–30.

The ALJ found that Heather was insured at the time of the alleged disability onset and that she did not engage in substantial gainful activity during the period from her alleged onset date through her DLI. R. 18. The ALJ found that Heather suffered from the severe impairments of migraines, obesity, ADHD, bipolar disorder, and anxiety. Id. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. Id. The ALJ specifically considered listing 11.02 (epilepsy), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). R. 20. The ALJ also considered Soc. Sec. Ruling 19–2 Titles II and Xvi: Evaluating Cases Involving Obesity, SSR 19–2p, 2019 WL 2374244 (S.S.A. May 20, 2019). The ALJ found that regarding her mental impairments, Heather had moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

managing oneself, and a mild limitation in understanding, remembering, or applying information. R. 20–21.

The ALJ concluded that Heather retained the RFC to perform a limited range of medium work. R. 22. Specifically, Heather can occasionally climb, stoop, and crawl. She can frequently kneel and crouch. Id. Heather should avoid concentrated exposure to noise (such as heavy traffic) and pulmonary irritants. Id. Heather can understand, remember, and carry out simple instructions and perform simple tasks. Id. She can have occasional interaction with others and is able to adapt to occasional changes in a customary workplace setting. R. 23. Heather can be off task 10% of the workday. Id. The ALJ determined that Heather cannot perform her past relevant work, but she could perform jobs that exist in significant numbers in the national economy, such as a packer, marker, routing clerk, and laundry classifier. R. 29. Thus, the ALJ determined that Heather was not disabled. R. 30. Heather appealed the ALJ's decision, and the Appeals Council denied her request for review on October 22, 2020. R. 1–4.

## ANALYSIS

### A. Medical History Overview

1. Medical Treatment

Heather attended bi-weekly appointments between April and May 2014 and monthly appointments between June 2014 and July 2015 with Molly Sharp, PA-C, and Himanshu Patel, M.D., at the Center for Emotional Care for her bipolar disorder, ADHD, and anxiety. Dr. Patel regularly adjusted Heather's medication during this period as she occasionally complained of side effects, notably weight gain. R. 306, 315. Heather also indicated some noncompliance with her medication regimen, generally indicating that her insurance did not cover her prescription. R. 294, 297, 300. Nevertheless, Heather's mental condition throughout this period was generally

stable, and she reported improvement in her mood while having low motivation. R. 297, 300, 309. While her mood fluctuated somewhat throughout this period, Heather's mental status exams generally revealed appropriate affect, coherent thought process, intact memory, fair insight and judgment, and good attention and concentration. R. 286, 289, 292, 298, 301, 303–304, 307, 310, 313, 319, 325. Heather also indicated that she attended therapy with Jeremy Suess, LPC, throughout this period. R. 282, 303.

In February 2016, Heather began treatment with Jitendra Desai, M.D., and Sarah Rodes, PA-C, at Avenues to Wellness. On an initial psychiatric assessment, Dr. Desai found that Heather had no suicidal intent, stable mood, euthymic affect, no paranoia or delusions, linear thought processes, and intact insight and judgment. R. 450. Dr. Desai diagnosed Heather with bipolar depression and modified her medication. R. 451. Heather attended appointments at Avenues to Wellness every few months between March 2016 and February 2017. At these appointments, Heather noted some improvement in her mood, but often complained of issues with motivation, fatigue, and irritability. R. 447, 448, 449. Treatment notes from this period included identical mental status reports noting that Heather had coherent speech, logical but sometimes tangential thought process, normal thought content, impaired attention and concentration, fair judgment and insight, broad affect, and euthymic mood. See R. 448–49.

In February 2017, Heather voluntarily admitted herself to Lewis Gale Medical Center's Partial Day Program, reporting increased depression and thoughts of self-harm. R. 401. Her initial psychological exam revealed that she had depressed mood and affect, coherent thought process, adequate attention and concentration, and fair insight and judgment. Id. She was diagnosed with bipolar disorder and severe depression without psychosis. Id.

Heather continued treatment with Dr. Desai and Ms. Rodes at Avenues to Wellness several times each year from 2018 through 2020. R. 687–703, 752–755. At times, Heather reported situational stressors due to family member deaths and the holidays, but she generally reported that she was back to a normal routine and able to complete her activities of daily living. Id. Heather's treatment notes from this period again included identical mental status reports, noting that she had coherent speech, logical but sometimes tangential thought process, normal thought content, impaired attention and concentration, fair judgment and insight, broad affect, and euthymic mood. See R. 688, 692, 696, 700. Heather also attended counseling with Ronald Salzbach, LCSW, in 2017. R. 333–344.

In March 2018, approximately 1.5 years after Heather's DLI, Heather reported to the ER for her bipolar symptoms, noting increased mania and depression because of situational stressors. R. 387. Heather was discharged with instructions to modify her medication and was referred for outpatient psychological evaluation. R. 392. Heather then participated in Lewis Gale Medical Center's Day Treatment program for several weeks. Heather reported gradual improvement in her mood and anxiety during throughout the program and was discharged in early April 2018. R. 347.

In addition to psychological concerns, Heather also complained of migraines both before and after her DLI. In January 2016, Heather began treatment with John Priddy, M.D. R. 491, 493, 502. Heather's physical examinations were generally normal, and Dr. Priddy diagnosed Heather with migraines, in addition to hypertension, asthma, and type-II diabetes, among other physical complaints. R. 493, 495, 501. In June 2017, Dr. Priddy referred Heather to Gary Harpold, M.D. for neurological evaluation. Heather's physical and psychological examinations were generally normal, and Dr. Harpold diagnosed Heather with chronic daily headache with

episodes of more severe migraines with aura. R. 477. Dr. Harpold advised treatment through preventative medication and Botox therapy. Id. At appointments throughout 2017 and 2018, Heather reported some continuing concerns with her migraines, however, she often indicated that her Botox treatment improved her symptoms. R. 467, 469.

2. Medical Opinion Evidence

In September 2018, state agency physician, Bert Spetzler, M.D., reviewed the record, finding Heather capable of medium work. R. 71, 73. Dr. Spetzler found Heather capable of sitting, standing, and walking, six hours in an eight-hour day and found she would have some postural limitations. R. 68–69 Dr. Spetzler found that Heather's migraines were not severe and that she had no environmental limitations. R. 69. The ALJ found Dr. Spetzler's opinion to be persuasive. R. 28. On reconsideration, state agency doctor William Rutherford, M.D., reviewed the record in December 2018. R. 86. Dr. Rutherford found Heather capable of medium work and noted similar exertional and postural limitations. R. 84–85. Dr. Rutherford also found Heather's migraines were not severe, although he found that Heather should avoid concentrated exposure to noise and fumes due to her migraines. R. 85. The ALJ found Dr. Rutherford's opinion to be more persuasive than Dr. Spetzler's as "he accommodated for [Heather's] complaint of migraines." R. 28.

In September 2018, state agency psychologist, Jo McClain, Psy.D, found moderate limitations in Heather's ability to concentrate, persist, and maintain pace, interact with others, and adapt or manage herself. Dr. McClain found no limitation in Heather's ability to understand, remember, or apply information. R. 71–73. State agency psychologist Andrew Bockner, M.D., found similar limitations upon review of the record in December 2018. R. 86–88.

On February 27, 2020, Ms. Rodes wrote a medical opinion regarding Heather's mental limitations noting that Heather had been diagnosed with bipolar disorder, anxiety, insomnia, and ADHD. R. 762–66. Ms. Rodes specifically found that Heather would have marked limitations in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to deal with normal work stress due to her mood disorder. Id. R. 762–63. Ms. Rodes further noted that Heather suffers a marked loss of ability to concentrate secondary to depression. R. 763. Ms. Rodes also found that Heather's condition would lead her to be absent about three times per month. R. 765. The ALJ found Ms. Rodes's opinion to be unsupported and inconsistent with the record. R. 28

### B. Physical RFC and Function-by-Function Analysis

Heather alleges that the ALJ's RFC findings are not supported by substantial evidence. In support, Heather points to her testimony regarding her migraines, which decreased in duration, but not in severity. Pl.'s Br. at 14, Dkt. 13; R. 45. Specifically, Heather argues that the ALJ failed to make specific findings regarding whether her migraines would cause episodes of pain requiring breaks and how often those breaks occur. Pl.'s Br. at 15, Dkt. 13; R. 22, 26. However, the evidence cited by Heather was not ignored by the ALJ, and her argument amounts to a disagreement with the ALJ's RFC determination that she should avoid concentrated exposure to noise and pulmonary irritants, essentially asking the court to reweigh the evidence. R. 26.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See Social

Security Ruling (SSR) 96-8p, 1996 WL 374184; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's RFC findings are supported by substantial evidence. The ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. R. 22–28.  Unlike the ALJ in Mascio, the ALJ in this case considered conflicting medical evidence and is "not left to guess about how the ALJ arrived at his conclusions." The ALJ's findings include a comprehensive analysis of Heather's medical records regarding the migraines, the medical opinions, Heather's hearing testimony, and the ALJ's

conclusions. R. 23, 26–28. The ALJ specifically explained that the RFC of avoiding noise and pulmonary irritants was to accommodate her migraines. R. 26.

Heather asserts that the ALJ ignores significant and substantial evidence in the record contradictory to the ALJ's findings. Pl. Br. at 16, Dkt. 13. Heather also argues that the ALJ never made specific findings regarding whether her impairments would result in time off task outside normal work breaks or absences. Id. at 15. However, the ALJ did not ignore any of this evidence, and to the contrary provided an extensive medical history regarding her migraines. R. 23, 26. The ALJ noted that "the effects of the claimant's headaches have been considered in the residual functional capacity." R. 19. Specifically, the ALJ explained how "the claimant's statements regarding her intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 26. The ALJ described Heather's migraine testimony (R. 23) and described her migraine treatment (R. 25–26). The ALJ considered the medical opinions of Drs. Spetzler, Rutherford, McClain, and Bockner, and Ms. Rhodes that Heather's migraines did not impair her ability to perform medium work. R. 27–28. The ALJ also noted in reviewing the medical evidence that Heather rarely complained about migraines prior to her DLI which she controlled with Botox. R. 26. In 2017, she began to complain of more significant migraines. R. 26, 28.

The role of this court is not to reweigh the evidence, as Heather urges, or substitute its judgment for the ALJ, but instead determine whether the ALJ's decision is supported by substantial evidence. See Sullivan, 907 F.2d at 1456. Accordingly, I recommend finding that substantial evidence supports the ALJ's RFC determination.

**C. Physician Assistant's Opinion**

Heather argues that the ALJ erred in finding that Ms. Rodes's medical opinion was not persuasive since Ms. Rodes's opinion is supported by substantial evidence.[5]

Because Heather filed her application in February 2018, 20 C.F.R. §§ 404.1520c governs how the ALJ considered the medical opinions in her case.[6] That regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). To evaluate the persuasiveness of medical opinions and prior administrative medical findings, the most important factors considered are supportability and consistency. Id. Supportability refers to "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation," 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while consistency denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim," 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "The ALJ may explain [his] consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency." Mary R. v. Saul, No. 3:19cv903, 2021 WL 388463, at *6 (E.D. Va. Jan. 19, 2021); 20 C.F.R. § 404.1520c(b)(3). Under these regulations, physician assistant opinions are considered acceptable medical sources. SSR 06-3p; 20 C.F.R. § 404.1520c.

---

[5] Heather makes no direct argument that the ALJ failed to follow the requirements in Bird v. Comm'r but suggests that mental health records after her DLI support her claim. 669 F.3d 337, 340 (4th Cir. 2012). Here, the ALJ considered Ms. Rodes's opinion, which was authored several years after Heather's DLI, as well as Heather's post-DLI medical appointments. While Bird requires an ALJ to consider post-DLI evidence in certain circumstances, there is no requirement that the evidence "be given any specific weight" or that the ALJ "completely ignore the fact that such evidence was submitted after the DLI." Brown v. Colvin, No. 6:15-cv-2539, 2016 WL 5539522, at *3 (D.S.C. Sept. 30, 2016). Here, the ALJ considered and analyzed the evidence as directed in Bird. 669 F.3d at 337, 340. The ALJ's finding that Ms. Rodes's opinion was unpersuasive is acceptable. See, e.g., Brown, 2016 WL 5539522, at *3 n.4.

[6] 20 C.F.R. §§ 404.1520c, 416.920c applies to claims filed on or after March 27, 2017.

Here, the ALJ appropriately considered the factors and the record in determining the persuasiveness of Ms. Rodes's medical opinion. In finding the opinion not persuasive, the ALJ noted that Ms. Rodes's objective findings on examination were not generally supportive of her opinion. Specifically, he noted that Ms. Rodes's psychiatric examination findings were copied from visit to visit without any explanation and were not otherwise explained. See R. 28. While Heather argues that consideration of Ms. Rodes's lack of explanation was improper, her argument is meritless. The ALJ accurately represents that Ms. Rodes's treatment notes include the same mental status examination findings visit-to-visit throughout Heather's multiple years of treatment with Ms. Rodes. See, e.g., 440–49 (showing same psychiatric examination findings from March 2016 to April 2018). As the ALJ noted, this is inconsistent with the narrative history section, which indicates some "waxing and waning" of symptoms over time. See R. 25. The ALJ's consideration of this evidence is proper as it goes directly to the opinion's supportability. See, e.g., Pearson v. Saul, No. 20-cv-01808, 2021 WL 2549214, at *3–4 (D. Colo. June 22, 2021). Moreover, though under the prior regulations, courts have regularly found that it is proper for an ALJ to consider whether medical records are "copied and pasted." See, e.g., Hernandez v. Berryhill, No. 6:16-CV-03223, 2017 WL 3448547, at *2 n.2 (W.D. Mo. Aug. 11, 2017); Aurilio v. Berryhill, No. 3:18-cv-00587, 2019 WL 4438196 (D. Conn. Sept. 16, 2019). The ALJ further noted that Heather's conservative treatment with Ms. Rodes, namely medication management, did not support the extent of the limitations Ms. Rodes assessed. See R. 21–22, 24–25, 28; R. 450 (finding normal mood, affect, thought process, insight, and judgment on initial examination with Ms. Rodes); R. 440–49 (indicating treatment through medication provided some improvement and that Heather "has been back to normal routine with ADL's").

As to consistency, the ALJ found that Ms. Rodes's opinion was inconsistent with the overall record, "which shows largely normal mental status examination findings during the period of review." R. 28; see, e.g., R. 286–87, 289–90, 292–93 (showing generally normal mental status). The ALJ noted that while Heather was occasionally hospitalized for mental health and/or engaged in day treatment programs, she generally maintained her medication regimen and reported some improvement from her medication. See R. 291, 285, 447, 449. He also noted that during the relevant period, Heather's treatment was conservative, she had only occasional visits with her mental health providers, and that she reported performing several activities of daily living.

The ALJ additionally cited Dr. Rutherford's opinions which noted Heather had only moderate limitations in concentration persistence and pace, adapting or managing oneself, and interacting with others. R. 28, 86–87. These opinions also noted that while Heather's bipolar and depressive symptoms "may interfere with completing skilled tasks in a normal work week," that it would only affect Heather to a moderate degree and that she could "meet demands of routine work schedule that does not require frequent changes or complex planning." R. 86–87.

The ALJ's finding that Ms. Rodes's opinion was not persuasive is supported by substantial evidence. See Healer v. Saul, SA–19–cv–01497, 2020 WL 7074418, at *10 (W.D. Tex. Dec. 30, 2020) ("Although the ALJ's discussion of the medical opinions was brief . . . he nonetheless explained whether he found the opinion to be supported by and consistent with the medical and other objective evidence and explained ultimately why he found the opinion to be persuasive"). Heather's citations to contradictory statements in the medical records amounts to her impermissibly asking the court to reweigh the evidence. See Harper v. Comm'r, No. GLR–13–909, 2014 WL 176777, at *1–2 (D. Md. Jan. 14, 2014) (stating that a court may not reweigh

the evidence or substitute its judgment for the ALJ when the ALJ provides substantial evidence to undermine the allegations in a treating physician's opinion).

### D. Mental Impairments 96-8p

Heather argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Heather asserts that the ALJ failed to properly consider her moderate limitations in concentration, persistence, by only addressing the skill level of work and not Heather's ability to sustain work activity over the course of an eight-hour workday.[7] Heather also claims the ALJ failed to explain "how he arrived at his conclusion that [she] would be off task 10% of the workday" and did not provide a proper hypothetical for the vocational expert.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts

---

[7] Heather also states that the ALJ failed to explain how Heather's moderate limitations in interacting with others and adapting or managing oneself are accommodated by the ALJ's RFC. However, Heather provides no argument to specifically support this claim. I find that the ALJ adequately explained and accommodated Heather's moderate limitations in interacting with others and adapting or managing oneself. Regarding Heather's ability to interact with others, the ALJ specifically acknowledged Heather's family stressors and her subjective allegations regarding social anxiety. R. 21, 23. Nevertheless, the ALJ noted that Heather interacted normally with her practitioners, went out in public to shop, cared for her children with help from her husband, and indicated she got along well with authority figures. R. 21; see also R. 278, 286 (cooperative). The ALJ also relied on the state agency psychologists' opinions, who found Heather had "satisfactory social skills" and was "capable of intermittent basic communication with others." R. 71, 87. Regarding Heather's ability to adapt or manage herself, the ALJ specifically acknowledged difficulty with performing personal care and endorsed stress in performing certain activities, including caring for her children. R. 22–23. The ALJ noted that Heather's treating physicians generally noted that Heather had appropriate hygiene and attire. R. 22; see R. 267, 295, 303 (appropriate appearance). He also noted that Heather could drive a car, attended to various activities of daily living without significant assistance from others, and did not usually complain about serious problems relating to adapting or managing herself. R. 22–23; R. 440–49. The ALJ also relied on the state psychologists' opinions, who found that despite Heather's impairments that she "would be able to meet demands of a routine work schedule that does not require frequent changes or complex planning." R. 71, 88.

(e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The decision in Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826

15

F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitation in concentration, persistence, or pace, Heather is capable of performing the basic mental demands of medium work, with the specified accommodations. Further, here, the ALJ explained why Heather's moderate limitations in concentration, persistence, or pace, interacting with others, and adapting or managing oneself, did not translate into a limitation in the RFC beyond "hav[ing] occasional interaction with others" and having up to "occasional changes in a customary work setting." R. 23.

As a preliminary matter, contrary to Heather's argument, the ALJ adequately supported his finding that Heather could sustain work activity over the course of an eight-hour workday and accounted for Heather's moderate impairments in his hypothetical questions to the vocational expert ("VE") and the RFC finding in his ruling. The ALJ asked the VE to consider "an individual of the claimant's age, education, and work experience who[] . . . is able to understand, remember, and carry out simple instructions and perform simple tasks with occasional interaction with others. The individual can adapt to occasional changes in the customary workplace setting" R. 54. Substantial evidence supports the ALJ's development of Heather's RFC as discussed below. The ALJ is not required to pose hypothetical questions to the VE relating to impairments not supported by the record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A]

hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

The ALJ found that Heather had moderate impairments in concentration, persistence, or pace, noting that "this area of functioning concerns actions that demonstrate the ability to focus attention on work activities and stay on task at a sustained rate." R. 21. The ALJ acknowledged Heather's testimony that she had difficulty focusing, was easily distracted, and had trouble finishing projects. R. 23–24. He also considered Heather's medical history, including treatment notes indicating that her attention and concentration were impaired. R. 25. Nevertheless, the ALJ noted that Heather did not generally complain to her treating providers of difficulty with concentration, persistence, or pace, and medical providers often reported adequate ability to concentrate, pay attention, and focus. R. 21; see R. 285–86, 297, 364, 425, 477. The ALJ noted that during the relevant period Heather engaged in primarily conservative treatment, generally consisting of outpatient appointments every few months. R. 26. The ALJ also specifically described Heather's activities of daily living, noting that she "reported watching TV for pleasure," "[took] her children to school and care[d] for two dogs with help from her husband," "[drove her] car," and "shopped for groceries once or twice per month for approximately two hours." R. 21. The ALJ found that these activities required at least some concentration and persistence. Id. Finally, the ALJ found both state agency psychologists' opinions persuasive, finding them consistent with the record. R. 27–28. The state agency psychologists both found that despite having a moderate impairment in concentration, persistence, and pace that Heather "ha[d] no obvious impairment in attention or concentration." The state agency psychologists

17

further found that while her bipolar or depressive symptoms could interfere with skilled tasks that any limitation would only be to "a moderate degree." R. 71, 87.

I find that the ALJ adequately explained the RFC restriction that Heather will be off task ten percent of the workday. The ALJ included this percentage in his Step Three analysis, where he discussed the same evidence mentioned above. See Richardson v. Berryhill, No. 5:15-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) (because ALJ "provided ample discussion of how [a plaintiff's] mental impairments impact[ed] her ability to perform work-related tasks," RFC that limited a plaintiff to a nonproduction pace passed muster "because the ALJ contextualized and explained how he reached his conclusion[.]").

The ALJ's reasoning is supported by the opinions of the state agency psychologists and the ALJ's consideration of the record. This court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. As such, I conclude that substantial evidence supports the ALJ's conclusions regarding Heather's RFC.

### E. Subjective Allegations

Heather asserts that the ALJ failed to explain how the evidence the ALJ cited establishes that Heather's assertions are not fully supported. Pl. Br. at 26–28, Dkt. 13. Heather testified that her mental condition and migraines preclude her from competitive work. Id. Heather's argument in this section of her brief essentially restates her arguments related to the ALJ's physical RFC findings and function-by-function analysis, analysis of Heather's mental impairments, and weighing of her treating providers' medical opinion, already addressed. Heather does not identify any subjective complaints that the ALJ failed to consider. Nor does Heather identify specific instances in this case where the ALJ improperly applied the legal standards. Rather, Heather asks

this court to re-evaluate her subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. "At this step, objective evidence is *not* required to find the claimant disabled." Arakas, 983 F.3d 83 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Here, the ALJ reviewed Heather's medical history and her subjective allegations in detail and found that Heather's statements regarding the severity of her limitations were not entirely credible because they were not fully supported by the objective medical evidence, her treatment history, or her daily activities. The ALJ was entitled to find that the objective medical evidence outweighed Heather's subjective statements, and he provided a sufficient rationale for doing so. A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective allegations and should not interfere with that assessment where the evidence in the record

supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Heather's subjective complaints with substantial evidence and that Heather can perform work at the level stated in the ALJ's opinion.

## **CONCLUSION**

I **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Heather's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 10, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge