CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 1 1 2022

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| **HEATHER W.,** | ) |
| | ) |
| **Plaintiff** | ) Civil Action No. 7:20-CV-728 |
| | ) |
| **v.** | ) |
| | ) |
| **KILOLO KIJAKAZI, Acting Commissioner** | ) |
| **Social Security,** | ) **By: Michael F. Urbanski** |
| | ) **Chief United States District Judge** |
| | ) |
| **Defendant** | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on February 10, 2022, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Heather W. (Heather) has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Heather filed an application for disability insurance benefits on February 26, 2018, alleging disability beginning on March 21, 2015. R. 203. Heather was 40 years old at the alleged onset date. Based on her earnings record, Heather had enough quarters of coverage to remain insured through September 30, 2016, making that her "date last insured" (DLI). R. 16.

Heather alleged disability based on bipolar disorder, anxiety disorder, migraines, depression, pre-diabetes, attention deficit hyperactivity disorder (ADHD), recurrent kidney stones, and high blood pressure. R. 202. The ALJ found that she had severe impairments of ADHD, migraines, obesity, bipolar disorder, and anxiety, but that none of her impairments met or equaled a listed impairment. The ALJ further found that Heather had the residual functional capacity (RFC) to perform medium work with additional limitations of occasionally climbing, stooping, and crawling, and frequently kneeling and crouching. She should avoid concentrated exposure to noise such as heavy traffic and pulmonary irritants. She would be able to understand, remember, and carry out simple instructions and perform simple tasks. She could have occasional interaction with others. She could adapt to occasional changes in a customary work setting and would be off task ten percent of the workday. Based on this RFC and the testimony of a vocational expert, the ALJ concluded that Heather could not return to her past relevant work as a staffing specialist, but could do the work of an agricultural packer, marker, routing clerk, or laundry classifier and that such jobs exist in significant numbers in the national economy. Therefore, he determined that Heather was not disabled. R. 16-30. The Appeals Council denied Heather's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Heather has objected to several of the magistrate judge's findings.

2

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. April 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .")

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed,

objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Heather objects to the following findings of the magistrate judge: (1) the ALJ's physical RFC assessment is supported by substantial evidence; (2) The ALJ's mental RFC assessment is supported by substantial evidence; (3) the ALJ properly considered the opinion of the physician's assistant who treated Heather's mental impairment; and (4) the ALJ properly considered Heather's subjective allegations.

### A. RFC Assessment

The ALJ found that Heather had the RFC to do medium work with additional limitations of occasionally climbing, stooping, and crawling, and frequently kneeling and crouching. She should avoid concentrated exposure to noise such as heavy traffic and pulmonary irritants. She would be able to understand, remember, and carry out simple instructions and perform simple tasks, could have occasional interaction with others, could

---

[2] Detailed facts about Heather's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 16) and in the administrative transcript (ECF No. 6) and will not be repeated here except as necessary to address her objections.

adapt to occasional changes in a customary work setting, and she would be off task ten percent of the workday.

### (1) Physical RFC

Heather argues that the ALJ did not adequately account for her migraine headaches because he did not address the frequency of the migraines, how long they typically last, or how the RFC findings accommodated her headaches. Heather testified at the ALJ hearing that during the relevant period of March 2015 through December 2016 she was having migraines "more time out of the month than not." R. 44. She said her migraines would last twenty-four to seventy-two hours and were followed by a recovery period of two to three days. Id. She also testified that after her DLI she began receiving Botox treatments and nerve blocks that helped shorten the length of time of the migraine to one or two days. R. 45.

The ALJ acknowledged Heather's testimony about her migraines and the treatment she received. R. 23. He also noted that on January 28, 2016, Heather reported one recurrence of a migraine which she attributed to cold weather and for which she took acetaminophen and rested. R. 502. The doctor advised her to take ibuprofen with a caffeinate beverage at the first sign of a migraine. R. 503. On September 16, 2016, she reported a migraine which she attributed to changes in the weather, allergies, and stress. R. 25, 491. In June 2017, after her DLI, Heather reported to a neurologist that she had experienced migraines since childhood and that over the past year she had been experiencing chronic daily headaches. R. 26. She began receiving Botox injections and reported excellent headache control during the 90 days between injections but began to have significant breakthrough headaches toward the end of the 90-day period. R. 26, 476, 376, 710.

In discussing the evidence of Heather's migraines, the ALJ stated the following:

> She also alleged migraines, for which she was treated with her primary care provider. However, the record only indicates a complaint in January 2016, and again in September 2016. She also mentioned migraines to her mental health provider in March 2016. It was not until after the date last insured in 2017 that the claimant began complaining of migraines lasting several days or more. The undersigned has provided that she should avoid concentrated exposure to noise (such as heavy traffic) and pulmonary irritants due to her migraines.

R. 26. The magistrate judge found that this discussion of Heather's migraines was sufficient and that Heather's complaints that the ALJ did not properly address her migraines amounted to a disagreement with the RFC determination that Heather's headaches could be accommodated by avoiding concentrated exposure to noise and pulmonary irritants. R&R, ECF No. 16 at 8, 9-10.

Heather objects that the ALJ did not address the frequency of her migraines or how long they lasted. However, this argument is refuted by the ALJ's opinion in which he accurately summarized her testimony about the migraine headaches. R. 23, 26. Heather next argues that the evidence documents that her migraines are triggered by more than just noise and pulmonary irritants, but she points to nothing in the record to support this allegation. She also argues that the record supports her complaints of migraines prior to her DLI, citing her report to the neurologist in June 2017 that she had been experiencing chronic headaches the past year, indicating that they began prior to her DLI. The ALJ acknowledged this report but weighed it against the fact that Heather reported migraines to medical providers only twice prior to her DLI and that she treated them with over-the-counter medication and rest.

While there is conflicting evidence about the frequency and severity of Heather's migraines, the ALJ accurately summarized Heather's testimony and the medical evidence in

8

the record. He also explained how he arrived at his RFC assessment and how the assessment accommodates the migraines. The court agrees with the magistrate judge that the ALJ's assessment of Heather's impairments is supported by substantial evidence and that subsequent reviewers can understand how he reached his conclusions. Therefore, Heather's objection to this finding is **OVERRULED**.

### (2) Mental RFC and Opinion of the Physician's Assistant

Heather's next two objections are addressed together because they are intertwined. She claims that the ALJ improperly assessed her mental RFC and that he improperly found the opinion of one of her providers unpersuasive.

For SSI cases filed after March 27, 2017, the ALJ evaluates medical opinions in accordance with 20 C.F.R. § 416.920c.[3] Consideration of medical opinions is expressed in terms of how persuasive they are. 20 C.F.R. § 416.920c(b). Medical opinions are evaluated for supportability, consistency, relationship with the claimant (including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship), specialization, and other factors that tend to support or contradict a medical opinion. The most important factors are supportability,[4] and consistency.[5] 20 C.F.R. § 416.920c(b) and (c). The ALJ does not defer or give specific evidentiary weight to any medical opinion, including those from a claimant's medical source.

---

[3] See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

[4] "Supportability" is explained as, "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1).

[5] "Consistency" is explained as "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

20 C.F.R. § 416.920c(a). Although the amended regulations no longer discuss the "weight" given to medical opinions, the ALJ's reason for finding an opinion persuasive or unpersuasive still must be supported by substantial evidence.

Heather was hospitalized on March 22, 2014, approximately one year before her alleged onset date, when she voluntarily admitted herself to a hospital after taking an overdose of Vistaril in an impulsive suicide attempt. R. 262-279. She was discharged on March 24, 2014, with an assessment of Bipolar Disorder Type II, Depression, and ADHD by history. She was continued on her medications of Cymbalta, Vyvance, and Abilify and it was recommended that she pursue individual and group therapy. R. 24, 278.

Heather sought mental health treatment from March 2014 until well after her DLI in September 2016. She saw a therapist approximately once a month through January 2015. She also began treating with the Center for Emotional Care and Chemical Dependency in April 2014 where she alternately saw a psychiatrist, therapist, and physician's assistant. R. 24-25, 285-329, 615-686.

On March 11, 2015, around her alleged onset date, Heather reported that she was doing okay and she was no longer taking any medications for mood stability. She denied mania and depression and said she was sleeping well. She had some irritability. R. 291. Her mental status exam was within normal limits with fair insight and judgment. R. 292. In May 2015, she reported a depressed mood and in July 2015, she reported her mood as having been her "normal ups and downs" R. 24, 285, 288.

Heather began treating with psychiatrist Jitendra Desai, M.D., and Physician's Assistant (PA) Sarah Rodes in February 2016. At her initial visit, she reported that her last manic episode

10

had been two years previously and she felt like she was doing well on her medication regimen except for some increased sedation, for which she wanted to lower the dosage of one medication. She had been depressed for the previous month and her house was messy due to fatigue and lack of motivation. She had anxiety when forced to be around a large crowd. Her mental status exam was normal except for slow speech. R. 450. The ALJ noted that Heather continued to see these providers both prior to and after her DLI. Her complaints of symptoms waxed and waned and she generally had normal mental status examinations with the exception of notes from her visits that her thought process was logical, tangential at times, and her attention and concentration were impaired. R. 25.

In February 2017, after her DLI, Heather voluntarily admitted herself for a mental health day treatment program following increased depression and thoughts of harm. R. 25, 402-426. She was described as having a depressed mood, psychomotor retardation, adequate attention and concentration, and fair insight and judgment. R. 404. Ten days later her mood was "okay" and her psychomotor state was described as "passive." R. 424. She began seeing a new therapist in August 2017 and the ALJ described the treatment notes as being largely a reiteration of her subjective complaints with no significant objective findings. R. 25, 333-340. In March 2018, Heather admitted herself to the day treatment program due to bipolar disorder. She said she was not functioning well because she had experienced deaths of three people in November and January. R. 25, 372.

On February 27, 2020, PA Rodes filled out a form entitled "Medical Opinion Re: Ability To Do Work-Related Activities (Mental)." PA Rodes was asked to indicate whether Heather had limitations ranging from none, mild, moderate, marked, and extreme in her ability

to do work-related activities. A moderate limitation was defined as being "more than a slight limitation in this area but the individual is still able to function satisfactorily." A marked limitation was defined as being a "serious limitation in this area. There is substantial loss in the ability to effectively function." An extreme limitation was defined as a "major limitation in this area. There is no useful ability to function in this area." R. 762.

PA Rodes found that Heather had a marked limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. She found that Heather had none, mild, or moderate limitations in all other areas and no extreme limitations. PA Rodes also noted that Heather had a marked loss of ability to concentrate secondary to depression and that she would be absent from work approximately three days per month. R. 762-66.

The ALJ found the opinion of PA Rodes unpersuasive because it was not supported by her examination findings which routinely noted a euthymic mood and appropriate affect. The ALJ noted that Heather's treatment notes indicated impaired attention and concentration, and a logical but tangential thought process, but PA Rodes did not provide any explanation of the notes. Moreover, it appeared that the exam findings were copied from visit to visit as they were always the same. Heather's initial examination was notable only for slowed speech and the overall record contained largely normal mental status examinations during the relevant period. Id.

The magistrate judge found that the ALJ appropriately considered the proper factors and the record in determining the persuasiveness of PA Rodes' medical opinion. Heather

12

objects that it was error for the magistrate judge to conclude that the ALJ appropriately considered PA Rodes' opinion of Heather's limitations. She claims that the ALJ ignored Rodes' treatment records where she documented changes in Heather's impairments, symptoms, and limitations. However, most of the records she cites are from 2014, well before her alleged onset date and during a time when she was still working.[6] R. 276, 300, 306-09, 315-316, 318-19, 321, 328.

Heather also cites evidence from the relevant period. At an exam on February 26, 2016, Heather's mental status examination was normal except for slow speech, although she answered questions appropriately. R. 450. On March 25, 2016, she complained of having had a migraine, but said her mood had improved slightly after a medication switch. She had some sadness, fatigue, lack of motivation, and irritability. Her anxiety had been fairly well-controlled. R. 449. In June 2016, she and her husband had been experiencing marital stress, and she continued to have some sadness, fatigue, lack of motivation, and irritability. R. 448. In August 2016, she reported that "things had been ok, and she was sleeping 'pretty good.'" She had some anxiety and depression related to a potential move. R. 447. As the ALJ noted, during those visits, her exam status was normal except for impaired concentration and a thought process described as "logical, tangential at times." R. 447-49.

Contrary to Heather's assertion, the ALJ did not ignore the evidence from her visits with PA Rodes but cited to it and discussed it. He found that it was not persuasive because Heather had received conservative care for her mental health impairments, reported that she

---

[6] According to a work history report Heather completed, from January 2014 through March 2015, she was working thirty hours per week as a cook in a restaurant. R. 189-191.

was stable on her medications, had largely normal mental status examinations, and the mental status examinations appeared be cut and pasted from one visit to the next. The ALJ adequately explained why he found the opinion unpersuasive and this court is not at liberty to substitute its judgment for that of the Commissioner.

Heather also argues that the ALJ mischaracterized the evidence when he found that her treatment was conservative, improved with medication, and that she was able to perform several activities of daily living. She then cites to records from 2014 from her brief hospitalization following the overdose and also to her reports of not bathing and not keeping her house clean. As discussed above, the hospitalization occurred well before her onset date, as did her reports of lack of motivation. R. 309, 276. The court finds that the ALJ properly characterized the evidence and provided a sufficient explanation of why he found PA Rodes' opinion unpersuasive. Heather's argument to the contrary is **OVERRULED**.

When the ALJ assessed Heather's mental RFC, he found persuasive the opinions of the state agency psychological experts[7] who found that she had mild restrictions in her ability to understand, remember, or apply information, and moderate limitations in her ability to interact with others, concentrate, persist, or maintain pace, adapt and manage herself, perform detailed instructions, complete a normal workday and workweek without psychological interruptions, interact with the general public, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. R. 27, 70-72, 86-88. The

---

[7] "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act." Although the ALJ is responsible for assessing a claimant's RFC, he must consider and evaluate any assessment of the claimant's RFC by state agency medical professionals. Titles II and XVI: Consideration of Administrative Findings of Fact, SSR 96-6P (S.S.A. 1996). See also Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (stating that the opinion of a non-examining physician can be relied upon as substantial evidence when it is consistent with the record).

ALJ said he found the opinions persuasive because Heather had received conservative care for her mental health impairments during the relevant period, reported that she was stable on her medications, and had largely normal mental status examinations. R. 28. At Step 3 of the sequential evaluation, the ALJ adopted the restrictions set forth by the state agency experts.[8]

The magistrate judge found that the ALJ opinion of Heather's mental RFC was supported by substantial evidence. Heather objects, contending that the ALJ did not explain how limiting her to occasional interaction with others and occasional changes in a customary work setting accommodated her moderate limitations in concentration, persistence, and pace, interacting with others, and adapting or managing herself.

Regarding her ability to interact with others, the ALJ noted that Heather generally interacted normally with all practitioners, who often recorded that she was cooperative and in no distress. She did not have regular deficiencies in eye contact, speech, or conversation, and she went out in public to shop. She did not generally complain of serious problems with interpersonal reactions and indicated she got along with authority figures and had never been

---

[8] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

terminated due to problems not getting along with others. The ALJ concluded that "[d]ue to the claimant's variable mood and reports of isolationist tendencies, the claimant can have occasional interaction with others." R. 21. The court finds this explanation sufficient because the ALJ clearly explained why he imposed the limitation.

In his discussion of Heather's ability to maintain concentration, persistence, and pace, the ALJ found that she did not generally complain to practitioners of serious difficulty maintaining concentration, persistence or pace. She reported symptom improvement with psychiatric medications, and practitioners did not observe her to be overly distractible or slow. She reported watching television, which requires some concentration and persistence, and she reported a variety of daily tasks, such as taking her children to school, caring for dogs with help from her husband, driving a car and going out alone, shopping in stores for up to two hours at a time, and handling her finances. She said she had difficulty paying attention, finishing what she started, and following written instructions, but she was able to follow verbal instructions relatively well if someone showed her the steps and went over them with her. The ALJ found that she had a moderate limitation in concentration that would limit her to simple instructions and tasks and that she would be off task ten percent of the workday, but that the evidence did not support any limitation in persistence or pace. Id.

Heather cites to evidence that she had racing thoughts and poor memory, R. 327, but that record predates her alleged onset date by almost a year. She also cites to findings by her treatment provider that she had impaired thought content and impaired attention and concentration. R. 449. The ALJ did not find those notes reliable because it appeared they were copied from visit to visit. R. 28. In any event, there is no dispute that Heather suffered from

16

symptoms related to her mental illness, but it is the duty of the ALJ and not the court to consider conflicting evidence about the impact of her symptoms on her ability to work and the ALJ did so in this case.

Heather also argues that the ALJ's reliance on the opinions of the state agency experts was misplaced because neither expert stated that Heather could sustain work activity over the course of an eight-hour day and both opined that she had poor stress tolerance. However, Heather misreads the record. Both state agency psychologists concluded that Heather was moderately limited in her ability to complete a normal workday and workweek, because her bipolar/depressive symptoms might interfere with completing skilled tasks in a normal workweek, but only to a moderate degree. R. 71, 87 (emphasis added). A "moderate limitation" means that a person has a fair ability to function in the area independently, appropriately, and effectively on a sustained basis. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c) (emphasis added). Thus, contrary to Heather's assertion, both state agency experts indicated that Heather could sustain work during a workweek, but that she would have only a fair ability to do so when completing skilled tasks.

The ALJ in this this case limited Heather to unskilled work. The court recognizes that "an ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780, F.3d 632, 638 (4th Cir. 2015)). But in this case, the ALJ did not find that Heather had a limitation in persistence

or pace. Rather, he found only that she had a moderate limitation in concentration. R. 21. Therefore, he limited her to unskilled work and this limitation does not run afoul of Mascio.

Although the magistrate judge discussed the ALJ opinion without noting that the ALJ found Heather had no limitation in persistence or pace, the court nevertheless agrees with the magistrate judge that the RFC assessment is supported by substantial evidence. The ALJ adequately explained why he found Heather had a moderate limitation in concentration but not persistence or pace and why he limited her to simple instructions and tasks.

The ALJ also found that Heather had a moderate limitation in her ability to adapt or manage herself, based on her reports of variable moods and difficulty responding to changes. To accommodate this limitation, the ALJ limited her to work involving occasional changes in a customary workplace setting and to occasional interaction with others. This restriction is supported by the evidence in the record.

The ALJ made a finding that Heather would be off task ten percent of the day. The magistrate judge found that the ALJ adequately supported this limitation at Step 3 of the sequential evaluation where he discussed the same evidence he relied upon to find the other limitations. Heather objects that the magistrate judge erred because under Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 (S.S.A. 1996), a proper RFC assessment requires a more in-depth discussion of plaintiff's mental impairments at Step 4 than at Steps 2 or 3. Heather is correct.

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential

> evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

Id. at *4. Nevertheless, in this case, the ALJ appears to have included the mental RFC findings at Step 3, along with his "paragraph B" and "paragraph C" findings. See R. 20-22. When discussing Heather's limitations in concentration, persistence, and pace at Step 3, he first summarized Heather's description of her symptoms and notes from her providers. He then stated that giving Heather's reports some weight in conjunction with her psychiatrist's notes of impaired attention and concentration, "the undersigned finds that she has a moderate limitation in concentration that would limit her to simple instructions and tasks. In addition, she would be off task 10 % of the workday." R. 21. In the Step 4 analysis of Heather's RFC, the ALJ referred back to the Step 3 findings, stating "[t]he claimant's mental residual functional capacity limitations are discussed in more detail in finding four above." R. 26.

The court finds that the ALJ provided the necessary narrative as part of his RFC analysis, although he did it at Step 3 rather than Step 4 of the sequential evaluation. The court agrees with the magistrate judge that the ALJ properly supported his mental RFC assessment with a narrative discussion and citation to the record. Accordingly, the court **OVERRULES** Heather's objections to the mental RFC finding.

### B. Subjective Allegations

When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to

determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id., SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources and other sources are considered. Id., 2017 WL 5180304, at *6.

The ALJ considers a claimant's statement about symptoms and any description by medical sources or nonmedical sources about how the symptoms affect activities of daily living and the ability to work. However, statements about symptoms alone will not establish disability. 20 C.F.R. § 404.1529(a).

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

Id.

The ALJ in this case set out Heather's subjective allegations and the statements she provided in her function report and summarized the other evidence in the record. He explained why he did not find her subjective allegations to be fully consistent with the record, citing to the medical evidence and the opinions of the state agency medical experts.

The magistrate judge found that the ALJ's assessment was supported by substantial evidence and that Heather's argument to the contrary essentially restated her earlier arguments

about the RFC findings by the ALJ and the manner in which her treating providers' opinions were weighed. He then found that Heather did not identify any subjective complaints the ALJ failed to consider or identify any misapplication of legal standards, but rather asked the court to re-evaluate her subjective allegations and come to a different conclusion.

Heather objects that contrary to the magistrate judge's finding, she did set forth specific arguments as to why the ALJ's assessment of her subjective allegations is not supported by substantial evidence. However, this objection is conclusory and provides no basis for review of the magistrate judge's finding. Heather then reiterates her argument that the ALJ improperly assessed the medical evidence and the opinion of PA Rodes. These arguments were addressed above.

The court agrees with the magistrate judge that Heather has not provided a basis for finding that the ALJ did not properly evaluate her subjective complaints. Accordingly, Heather's objections to the magistrate judge's finding on her subjective allegations is **OVERRULED.**

### V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: $03 - 10 - 2022$

Michael F. Urbanski
Chief United States District Judge